Golden *v.* Knapp.

PETER S. GOLDEN and others, respondents,

and

SAMUEL KNAPP and others, appellants.

Where there is an agreement in writing to reconvey to a wife and her children, which is lost or withheld, a specific performance will be decreed, according to the terms of the agreement as shown by secondary evidence.

*Mr. Robert Allen, Jr.,* for appellants.

*Mr. W. H. Vredenburgh,* for respondents.

The appeal in this cause was taken from the following opinion of the vice-chancellor, and the decree thereon.

THE VICE-CHANCELLOR.

The controversy in this case is between a husband and his three infant children on one side, and his wife, her father and her brother on the other. If the female defendant had not testified she wished she had never given birth to the infant complainants, her position towards them in

this litigation would seem to be both painful and unnatural. The object of the suit is to compel the father and brother to perform an agreement made by the father with the husband for the benefit of his wife and their three children.

The bill charges that the complainant, Peter S. Golden, conveyed his farm to his father-in-law, Samuel Knapp, on the 9th of March, 1874, pursuant to a contract executed cotemporaneously with the deed, whereby Mr. Knapp agreed to free the farm from encumbrance, and, on the expiration of eighteen months from its date, to convey it to Mrs. Golden and her children, in such manner that she should be invested with an estate for life, and her children with the remainder in fee, and that Mr. Knapp has refused to keep his contract, but, in violation of it, on the 5th of January, 1876, conveyed the farm to his son, Samuel P. Knapp.

Samuel P. Knapp took title with notice of the contract. His own evidence renders this entirely clear. His deed was delivered January 5th, 1876. He swears that on the 23d of December preceding, Golden told him he and his father-in-law had had a difficulty; that if he was not permitted to live on the farm peaceably, and to do as he wished, he would throw the matter into the court of chancery, and, on being asked what he would throw into chancery, Golden replied there was a paper, and expressed surprise that his wife and father-in-law had not informed Knapp about it, and then said to him, he would find out all about it. This was quite sufficient to put Samuel P. Knapp on inquiry. Besides, it is very difficult, if not impossible, to believe that the father and sister of Mr. Knapp withheld from him all knowledge of this contract, if his part in this transaction was as important as that they now assign to him, and his motives in assuming it were as generous and affectionate as those they now ascribe to him. There was no motive for suppression. The defendants all say the husband was informed, during the negotiation, that their object in desiring him to surrender the title was that it

Golden v. Knapp.

might be transferred to his wife, and they also say, the con-
tract merely required the father to convey the farm to his
daughter and her heirs, no provision being made that any
estate or interest should be granted to the children.  The
contract then simply made sure, what, according to the
admissions of the defence, had been agreed upon by all
parties.  Concealment under such circumstances would be
senseless and unnatural.  It must, therefore, be held that,
so far as the rights and interests claimed by Samuel P.
Knapp were derived through his father, he stands just
where his father would have stood if he still held the title
to this farm.

It is admitted an agreement of some kind was executed.
Whether it was executed before or after the deed, or simul-
taneously with it, is unimportant.  It was an inseparable
part of that transaction, constituting the whole consideration
to be received by the husband for his conveyance.  The
claim that it was procured by duress, or the exercise of
improper influence, is utterly groundless.  The father, it is
true, at first declined to sign it, not, however, because he
disputed his promise to reconvey, but because he thought
his son-in-law ought to take his word, and not require him
to bind himself by written contract.  His son-in-law simply
required him to put his promises in durable and incontest-
able form.  If they were made in good faith no force or
artifice was necessary to induce him to bind himself to keep
them.

The most important question of the case is, what were
the contents or terms of the contract?  The complainants
have been unable to produce it.  On its execution, the
husband wanted it sent with the deed to be recorded; the
father-in-law objected, and it was then delivered to the
wife.  She says she took it home to her father's house and
put it under some clothing in a drawer of a bureau in her
room; that she took it out again the same day, and read it
to her mother, and then returned it to the same place, and
has never seen it since.  She further says she discovered it

had been removed about a week after she put it away, and at once made a careful but unsuccessful search for it. She notified no one of its loss, and neither made inquiry for it, nor asked any one to aid in searching for it. She admits she never informed her husband of its loss. It is not denied that he applied to her frequently for it, and it is shown, by evidence entitled to full credit, that on one of these occasions, long after she says she had discovered it was gone, she told him it could be got within twelve hours. In view of her conduct, as she has portrayed it herself, and the position she holds in this litigation, it is impossible to believe she is not solely responsible for the non-production of this important paper. She may not have destroyed it herself, but her unnatural unconcern when she discovered it was gone, and her subsequent statement that it could be obtained in a few hours, render her account of its disappearance utterly incredible. She and her father both say the contract required the farm to be conveyed to her and her heirs, giving her a fee. They are not trustworthy; neither is entitled to full credit. The husband says it required the farm to be conveyed to his wife and her children. It was drawn by a lawyer of learning and experience; his conduct in the business was eminently prudent and just, and he seems to have given it such careful personal attention that he is able to recall many of its details with remarkable clearness. He swears it provided, in substance, that after the expiration of a certain time, the exact limit of which he cannot state, the farm should be conveyed to the wife for life, and on her death it should go to her children. Whatever might be the legal effect of these words if used in a grant, I think there can be no doubt, when used in a contract for the conveyance of lands, executed under circumstances similar to those under which this was executed, they are to be understood as stipulating that a life estate shall be conveyed to the parent, and a remainder in fee to the children. The high character of this witness, his fairness and impartiality, and the evident

caution with which he speaks, entitle his testimony to full belief. In my judgment the contents of the contract are sufficiently proved by him to entitle the complainants to a decree. Indeed, I regard his evidence as the only trustworthy proof on this point in the case.

The claim of Samuel P. Knapp, that he made a contract for the unconditional purchase of this farm, and that the conveyance to his father was made in fulfillment of that contract, is not only positively denied by Mr. Golden, but stands contradicted by almost every act and paper connected with the transaction possessing the slightest probative force. The mortgage for $7,000, which he says he loaned to pay on the original purchase of the farm, was made to his father; it stood in his name for nearly six years, and was surrendered by him for cancellation; he assumed the payment of a mortgage on the farm in the deed made to him, and, subsequently, claimed and obtained a deduction for part of it from the amount of his property assessable for purposes of taxation; in all the family conferences and negotiations, the wife's father, and not her brother, was mentioned as the repository of the title until the final execution of the scheme, and, when the discussion arose, at the time the deed to the father was executed, as to whether or not he should bind himself by a writing to perform his promise, neither he nor his daughter intimated, in the most distant manner, that they understood that the conveyance was to be made in execution of a contract of purchase with Samuel P. Knapp. The facts of that transaction show conclusively that they had no such understanding. The design of this branch of the defence is to sweep away, by the oath of a single witness, who is flatly contradicted by another quite as credible as he is, a regular and formal written title to lands. That cannot be done.

The complainants are entitled to a decree; I will so advise.

The opinion of the court was delivered by

Scudder, J.

The bill of complaint in this cause charges that on the ninth day of March, eighteen hundred and seventy-four, Peter S. Golden and his wife, Elizabeth W. Golden, executed and delivered to Samuel Knapp, the wife's father, a deed of conveyance in fee simple, with full covenants, conveying the homestead farm of said Peter S. Golden, situate in Holmdel township, in the county of Monmouth, by the description therein set forth, subject to a bond and mortgage given by said. Golden and wife, to his father, John Golden, to secure the payment of ten thousand dollars, and another bond and mortgage by the same parties to said Samuel Knapp, to secure the sum of seven thousand dollars, which mortgages, by express covenant in the deed, the said Samuel Knapp assumed to pay.

It further charges that at the same time the said Samuel Knapp signed and delivered to said Peter S. Golden, an agreement in writing that, upon the expiration of eighteen months from that time (such extension having been previously agreed upon by the parties), he, the said Samuel Knapp, would convey said farm to the said Elizabeth W. Golden, his daughter, for life, and to the children of said Peter S. Golden and Elizabeth W., his wife, in fee, free and clear 'of all encumbrances; that the deed was duly recorded on the tenth day of March, eighteen hundred and seventy-four, and the agreement delivered to said Elizabeth, without recording, on the day of its execution, for temporary keeping. This agreement the wife now alleges that she has lost, or mislaid, so that she cannot produce it, and the main controversy between the parties is based upon its exact terms.

Other facts in the case are proven and undisputed. It is shown that Peter S. Golden and wife continued to live on the farm after the conveyance was made to her father, and

Golden *v.* Knapp.

Samuel Knapp and his wife lived with them, and remain there until the present time.

On the fifth day of January, eighteen hundred and seventy-six, Samuel Knapp and wife executed a deed of conveyance of the farm to their son, Samuel P. Knapp. On the twenty-sixth day of January, eighteen hundred and seventy-six, Peter S. Golden left the farm and removed to Freehold, where he has since resided. He was ordered to leave by his father-in-law, because, as it was alleged, he had become intemperate and unkind to his wife. She remained on the farm, has become hostile to her husband, and joins with her father in denying that the agreement was made for the benefit of her children, claiming that she alone was to have the property on the reconveyance by the father.

Samuel P. Knapp claims that he took the deed from his father without any knowledge of the agreement, although he knew of the conveyance at the time it was made from Peter S. Golden and wife to his father, and, as he testifies, furnished the money for the mortgage of seven thousand dollars, which was taken in his father's name; and, also, the sum of six thousand and five hundred dollars, which has since been paid on account of the ten thousand dollar mortgage held by John Golden. He says that, although he furnished the money which has made the consideration of the conveyance, he wished the deed made to his father, because he thought it would gratify him.

The complainant charges that his father-in-law, brother-in-law and wife all knew and assented to the terms of the agreement, and are conspiring to deprive him and his three young children of their rightful interest in his farm, which was conveyed for less than its value, for the purpose of securing the same to his wife and children, and freeing it from encumbrances. He has, therefore, filed this bill of complaint to enforce a specific performance of this agreement, and joins with him his three children, all under the age of seven years, as complainants.

This is a most unhappy family controversy, in which the prejudices and passions of the parties have produced much conflicting and untruthful testimony. The main facts of the case are, however, clearly shown. After a careful reading of all the testimony in the cause, I agree with the vice-chancellor in his conclusions.

Samuel Knapp, Peter S. Golden, his wife, and the attorney were present when the deed was made and the agreement drawn at the attorney's office in New Brunswick. Mr. Knapp objected to have the agreement put in writing, wishing it left to his verbal promise to make a reconveyance. The attorney very properly insisted that the agreement should be in writing, and Mr. Knapp, after some persuasion, consented. The pretence that the wife was at the time under duress of her husband, and was induced thereby to urge her father to execute the agreement, is incredible. Mr. Knapp was under no constraint, and yielded to what he was persuaded was right. This was effected by the faithful conduct of the attorney. It was this circumstance that fixed the terms of the agreement in the attorney's mind, and his recollection of the most material contents is distinct. He says that the title was to be conveyed by Samuel Knapp to Mrs. Golden for her life, and after her death it should go to her children; and that he was directed to draw the deed so that the encumbrances should be assumed by Mr. Knapp. He also thinks that the money consideration was the amount of the encumbrances. This appears clearly from the evidence. Peter S. Golden corroborates this testimony. Samuel Knapp and Mrs. Golden say that the deed was to be made for her benefit, admit that her heirs may have been included, and hardly deny that those heirs were her children. It seems quite evident, as the farm conveyed had been the property of Mr. Golden's family for many years, that his children by his wife Elizabeth were in the minds of the parties at the time, and this fact induced him to join in this conveyance, but as the attorney who wrote the agreement does not thus

Golden v. Knapp.

limit the description of those who were to take under the deed, the more general term, " her children," should be adopted. This result, also, is just and equitable, because the mortgage encumbrances, amounting to $17,000, nearly equal to the value of the farm, were assumed by her father.

There is abundant evidence in the testimony of Samuel P. Knapp himself to show that he knew that this farm was purchased for his sister, while he was expecting to receive from his father the farm near New Brunswick, and yet he has taken a deed which keeps her from the legal title to which she says she was entitled by the agreement. And, if his statement be true, that he has furnished all the consideration money for this farm, he may deprive her of all interest in the property. He holds the legal title now, long after the father was to make reconveyance to Mrs. Golden, and claims that he has paid full consideration for the farm. His position is contradictory to all the evidence in the cause. He voluntarily took this title to contend with the complainant, with full knowledge of all the facts, and the case stands as if the title were still in Samuel Knapp. It appears that he joined with his father in furnishing money to pay off the encumbrances, so far as they were satisfied, but whether the money used was actually his or his father's, is a doubtful point in the case. The pretence that the title was given in the first instance to his father to gratify him, and that they, without his knowledge, made an agreement that the property should be reconveyed to his sister and her children, cannot be believed in considering all the testimony. The conveyance to him after the difficulty with Peter S. Golden, and his denial of all knowledge of the agreement at the time it was made, are done in execution of the purpose to cut off Golden from any possible future interest in this property. The consideration for which Peter S. Golden parted with his title in this farm was that it should be conveyed over to his wife and children. Samuel Knapp took the title burdened with this trust, and Samuel P. Knapp, his son, who had knowledge of the trust before he

received the title, must be charged with its execution. The agreement in writing, made and delivered contemporaneously with the deed, which the wife has lost or withholds, qualifies the deed, and settles the terms of the trust which are supplied by secondary evidence of the contents.

It is needless further to particularize the facts and other points in the case which are discussed and satisfactorily disposed of in the vice-chancellor's opinion. The agreement should be specifically performed by the said Samuel Knapp and Samuel P. Knapp, according to its terms, as above stated.

The decree is affirmed.

Decree unanimously affirmed.