The bill is to impress a trust on lands. In May, 1926, the complainant and his wife, now deceased, executed a deed in fee to the defendants, husband and wife, for a small summer-use bungalow near Keensburg, valued at $2,500. The complainant and his wife were married two years before; were aged people and each had adult children by previous marriages, the female defendant being the wife's daughter. The wife had little to nothing. The complainant owned the bungalow and a house in Newark, in all worth less than $10,000. He is an easy-going German of average intelligence, speaks English brokenly but cannot read the language. He and his wife had arranged for the disposition of their estates and went to a lawyer to have the matters put in shape. They had arranged that the wife's daughter was to have the bungalow *Page 384 
and the rest of their property was to go to the complainant's two sons. The lawyer drew a deed to the daughter and her husband for the bungalow and mutual wills of the complainant and his wife giving each other their estates, and in the event of a lapse of the gift by the death of either the estates were to go to the complainant's sons. Upon the lawyer explaining to the complainant that the deed would be presently effective to deprive him of the bungalow he refused to execute it until the lawyer drew an agreement that during the life of himself and wife, and the survivor, the two families were to use the bungalow in common; that the defendants were not to sell it and that they were to convey it to a purchaser upon request of the complainant, or his wife if she survived him, if either stood in need of the fund, and upon the failure of such an event the conveyance was to stand absolute on the death of the survivor. The defendants signed the agreement in duplicate and an extra copy was retained by the lawyer, who explained at the time that the deed, in effect, was a "leasehold." The wife died two months later and the complainant married again within six weeks. In the fall of that year or the year following the complainant expressed his intention of selling the bungalow, and the defendant, the son-in-law, protested, claiming absolute ownership, and the defendants now set up that the agreement was simply one for common enjoyment of the bungalow, and that they would not sell it during the parents' lifetime. They deny the trust to convey upon request when in need. The signed agreements were destroyed by the defendants and the lawyer's copy is lost. The lawyer gave evidence of the contents of the documents, as just related. Secondary evidence is admissible to establish a lost writing essential to satisfy section 3 of the statute of frauds, that an express trust in lands "shall be manifested and proved by some writing signed by the party." The best evidence is the writing itself duly authenticated, but its production to the court is not indispensable. If it be lost it may be proved in the same manner as any other lost document is established. The statute requires *Page 385 
the execution of a writing which manifests and proves the trust, not that the trust shall be proved by the production of a written declaration of the trust. Knapp v. Golden, 28 N.J. Eq. 605; 27C.J. 380; Van Horn v. Demarest, 76 N.J. Eq. 386. The attending circumstances support the lawyer's version of the agreement. The mission of the complainant and his wife to the lawyer's office, aside from paying off a $1,000 mortgage on the bungalow, was to protect each other by will and to make provision for their children at death. Their intentions were entirely testamentary. The complainant had just used his hard earned savings to clear the bungalow of debt and they were not stripping themselves of their slim holdings, at least not until death divested them. This was emphasized by the complainant's protest against conveying the bungalow outright, and hence the wills and the compromise agreement declaring the trust; in itself testamentary. The method and legal formula employed by the lawyer they did not grasp, but they did understand that the conveyance was to be as readily terminable as were the ambulatory wills, and at the discretion of the complainant or his wife, if she survived him, and either were in need of the fund to be produced by sale. The defendants are responsible for the absence of the agreement. After the duplicates were executed by the daughter's husband in the lawyer's office, complainant, in confidence, handed them over to him. Later they were signed by the daughter at her home, and two weeks later she says she offered them to the complainant, who declined them, putting them down on the kitchen table after expressing his confidence in the defendants. She knew they were legal documents and of importance to her mother and the complainant, at least to the extent of their life interest, according to her interpretation, and yet she says she picked them up with the rubbish and threw them in the garbage because, as she says, they were of no use to her. That is startling treatment of title papers; not the way such things are handled; her story is not acceptable. The complainant says there was no such occurrence. The copy retained by the lawyer vanished from his files in which he *Page 386 
kept it with the deed after recording. Its loss was discovered after the daughter's husband had called to get the deed. Whether the copy was also handed to him is unsolved, but the disappearance of all these pieces of evidence is peculiarly disadvantageous to the complainant. The duplicate trust agreement was in the possession of the defendants in confidence, not in surrender of the complainant's rights. They had, and the belief is that they still have it within their power to prove its true terms, and the inference is that its production will be to their disadvantage. If they suffer by the decree they have but themselves to blame. The trust is established. A decree may be entered impressing it upon the lands, and will be enforced upon a showing that a purchaser is found and the complainant stands in need of the proceeds. Upon enforcement, if the defendants have had any outlay for substantial improvements on the bungalow they will be reimbursed. And further, the mutual wills were, in a sense, contractual undertakings, and if the complainant profited by the will of his wife he ought in equity to account to the defendants.